[No. 31594. Department One. September 7, 1951.]

THE STATE OF WASHINGTON, *on the Relation of Elmer J. Cousineau et al., Appellants*, v. ROBERT JOHNSON *et al., Respondents.*[1]

*Kelley, O'Sullivan & Myers,* for appellants.

*The Attorney General* and *Philip W. Richardson, Assistant,* for respondents.

[1]Reported in 235 P. (2d) 289.

PER CURIAM.—This is an appeal from the dismissal of a petition for an alternative writ of mandate requiring the respondents to give the relators either a passing grade in an examination they had taken or a new examination. It is contended by the relators that the basic sciences examination given by the respondents in January, 1950, did not comply with the law requiring that it be elementary in character, and, further, that they had passed as much of the examination as was properly elementary. It is alleged that the respondents acted capriciously, arbitrarily, and in abuse of their discretion in preparing the questions and grading the examination papers.

We are confronted with no question of law, the only issue being whether the relators established facts entitling them to the relief requested, and we are therefore disposing of the appeal by a *per curiam* opinion.

To practice chiropractic in this state, it is necessary to have a license. Laws of 1919, chapter 5, § 4, p. 20; Rem. Rev. Stat., § 10099 [P.P.C. § 361-3]. To secure such a license it is necessary, among other things, that the applicant take an examination in the sciences of anatomy, physiology, chemistry, pathology and hygiene. Laws of 1927, chapter 183; Rem. Rev. Stat., §§ 10185-1 to 10185-8 [P.P.C. §§ 734-1 to 734-15], inclusive. (This is generally referred to as the basic sciences law, and the sciences named are hereinafter referred to as the basic sciences.) This examination must be taken by all persons applying for licenses to practice medicine and surgery, osteopathy, osteopathy and surgery, chiropractic, or drugless therapeutics; and it must be passed before the applicant can take the further examination required in the particular branch of the healing arts in which he desires to practice. This preliminary examination is to be of such a character as to constitute an adequate test as to whether the person examined

". . . has such knowledge of the elementary principles of such sciences as taught at the University of Washington and Washington State College, in one year's instruction of thirty-six weeks, or as taught in one year's instruction of thirty-six weeks at any college or university accredited by

the University of Washington, or the equivalent thereof." Rem. Rev. Stat., § 10185-3.

The relators, desiring to be licensed for the practice of chiropractic, took the January, 1950, examination as prepared and conducted by the respondents, who constituted the examining committee in the basic sciences. (The examining committee is appointed by the governor, and its members must be members of the faculties of the University of Washington and Washington State College. Rem. Rev. Stat., § 10185-1.) The relators refused to answer questions which they deemed to go beyond the elementary phases of the basic sciences, and instead wrote statements such as the following:

"Not elementary."

". . . Any further discussion is not considered elementary according to Basic Science law, State of Washington."

"This question is not elementary."

"By law, certain of the healing arts are prevented from performing the above examination. Therefore this can not be an elementary question for that proff."

"This question is *not elementary*. It requires a detailed knowledge of *physiology and of organic chemistry*. Definitely *it is not elementary*."

". . . This is not *basic* to the work of other [than medical] healing arts such as chiropractic. . . . Thus this part of the question is not *basic* to all the healing arts, but only to one profession, namely *medicine*."

(The relators assert that their reasons for this procedure are immaterial; and consequently, in our consideration of the record, we have disregarded all references to their reasons, thereby eliminating the necessity for a consideration of the fourth and fifth assignments of error, relating to the admissibility of evidence with reference thereto.)

The relators received a grade of zero on every question they refused to answer, and they all failed to secure a passing grade in the examination.

The issue, then, is whether the January, 1950, examination in the basic sciences was confined to the elementary principles of those sciences

" . . . as taught at the University of Washington and Washington State College, in one year's instruction of thirty-six weeks, or as taught in one year's instruction of thirty-six weeks at any college or university accredited by the University of Washington, or the equivalent thereof." Rem. Rev. Stat., § 10185-3.

Mention is made of the fact that anatomy, pathology, and physiology are now taught in the medical school of the University of Washington, and not in departments of the college of liberal arts and sciences, as in 1927. It is clear that at the university there are elementary courses in physiology available outside of the medical school, and that admission to the anatomy and pathology courses taught in that school is not limited to medical students.

Dr. Donald J. Gray, professor of anatomy at Stanford University, testified that any college student who had completed one year of the study of anatomy should be able to answer all the questions asked on that science in the January, 1950, examination. Dr. John J. Sheehy, assistant professor of pathology at the University of Washington, testified that any student who had taken a full year's course in that science should be able to answer all the questions asked; he referred to the examination as "relatively easy." Dr. Donald S. Farner, who teaches physiology at Washington State College, where there is no medical school, testified that any student who had completed two one-semester courses in physiology in that institution could easily have answered the questions.

The relators have not established that they were in any way prejudiced or handicapped by the fact that anatomy, pathology, and physiology are now taught in the medical school at the University of Washington.

Nor are we impressed with relators' suggestion that the examination should take into consideration the basic sciences courses as taught in 1927, when the basic sciences law was passed. Time and the sciences march on.

█ The evidence of the respondents, supported as it was by the testimony of an eminent authority in each of the five sciences covered by the examination, makes it impos-

sible for us to arrive at any conclusion other than that, with very minor exceptions involving one tenth of one question in physiology and three tenths of one question in chemistry, the relators were asked nothing that is not elementary within the limitations placed upon that term by Rem. Rev. Stat., § 10185-3.

We are convinced from a study of the record before us that not only did each of the relators fail to secure a passing grade (required by Rem. Rev. Stat., § 10185-5, to be "not less than seventy-five per cent, and a grade in each of the said subjects of not less than seventy per cent") on the questions that were elementary, but that any college student who had successfully taken a first-year course in each of those sciences at any college "accredited by the University of Washington" could have passed the examination without difficulty.

There is absolutely no evidence that the respondents acted arbitrarily or capriciously either in the preparation of the questions for the examination or in the grading of the answers of the relators.

We agree with the trial court that the relators "entirely and completely failed to make out a case." The action of the trial court in dismissing their petition for an alternative writ of mandate is affirmed.

FINLEY, J. (dissenting)—Analysis of the record in this cause, the statute involved, and the dubious standards prescribed by the latter, indicates to me that there is basis for equitable relief; consequently, I dissent.